NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RESHONDA HUNTER, Administrator *Ad Prosequendum*, of the Estate of RONALD SMITH, deceased, 207 Court Street, Apt. 1-A, Newark, New Jersey, 07013, and all heirs Individually, *i.e.*, Reshonda Hunter, Rashaan Hunter, Dorian Smith, and Leila Smith, <br><br> Plaintiffs, <br><br> v. <br><br> DEMATIC USA, DEMATIC CORPORATION, AMAZON.COM, INC., AMAZON FULFILLMENT SERVICES, INC., GENCO I INC. d/b/a GENCO, and John Does #s 1-10, ABC Corps # 1-10, <br><br> Defendants. | OPINION <br><br> Civ. No. 16-00872 (WHW)(CLW) |

**Walls, Senior District Judge**

This case involves the accidental death of a warehouse worker who became caught in a conveyor belt system. The Decedent's heirs bring state law wrongful death, survival, strict product liability, and post-sale negligence claims against the Defendants. Defendant Dematic Corp., the manufacturer of the conveyor belt system, now moves to dismiss several claims in the amended complaint. Decided without oral argument under Fed. R. Civ. P. 78, Dematic's motion is granted in part and denied in part.

BACKGROUND

A full factual and procedural history of this case is included in the Court's May 18, 2016 opinion and order and incorporated by reference here. ECF No. 35. For the purposes of this

1

Case 2:16-cv-00872-WHW-CLW   Document 38   Filed 06/15/16   Page 2 of 16 PageID: 377
NOT FOR PUBLICATION

opinion, the Court assumes the truth of the following allegations in the amended complaint. ECF No. 19. The Decedent, Ronald Smith, was at the time of his death an adult individual residing in New Jersey. *Id.* ¶ 2. Plaintiff Reshonda Hunter is the administrator *ad prosequendum* of the estate of Decedent Smith and resides in New Jersey. *Id.* ¶ 1. Plaintiffs Rashaan Hunter, Dorian Smith, and Leia Smith are heirs of the Decedent and reside in New Jersey. *Id.* ¶¶ 3-5, 16.

Defendant Dematic Corp. ("Dematic"), improperly pled as the separate entities Dematic Corporation and Dematic USA, *see* Decl. Robert A. Schaefer, Jr., ECF No. 25-1, is an entity organized under Delaware law that designs, manufactures, installs, and services merchandising equipment, including conveyor belts and sortation and palletizing systems ("CSPs"), with its principal place of business located in Michigan and an office located in Basking Ridge, New Jersey. ECF No. 19 ¶¶ 6, 7, 20. Defendant Amazon.com, Inc. is an entity organized under Delaware law involved in the sale, marketing, and/or distribution of products with a service of process address in Wilmington, Delaware. *Id.* ¶¶ 8, 21. Defendant Amazon Fulfillment, Inc. is an entity organized under Delaware law with a service of process address in Wilmington, Delaware. *Id.* ¶ 9. The Court will refer to these defendants collectively as "Amazon." Defendant Genco I, Inc. d/b/a/ Genco ("Genco") is an entity organized under Delaware law with a service of process address in Wilmington, Delaware. *Id.* ¶ 10. Defendants John Does 1-10 and ABC Corps. 1-10 are fictitious entities or persons pleaded to represent additional, unknown entities or persons who are liable to Plaintiffs under the causes of action brought in the complaint. *Id.* ¶¶ 11-12. Non-party Abacus Corporation ("Abacus") is a Maryland entity with its principal place of business located in Richmond, Virginia. *Id.* ¶ 17.

On or about December 4, 2013, Defendant Amazon used a facility located at 301 Blair Road, Avenel, New Jersey (the "Facility") as a warehouse and distribution center. *Id.* ¶ 21.

Under an agreement with Amazon, Genco operated the Facility. *Id.* ¶ 24. Amazon exclusively owned all of the equipment at the facility, *id.* ¶ 26, and Amazon and Genco exclusively controlled all of the equipment at the facility. *Id.* ¶ 27. This equipment included a CSP that was designed and manufactured by Dematic and sold to Amazon for use at the facility (the "A-CSP"). *Id.* ¶ 22. Post-sale, Dematic provided services to Amazon at the facility, including installation, field service, consulting, training, engineering, servicing, and upgrading the A-CSP. *Id.* ¶ 23.

Decedent Smith was an employee of Abacus who was temporarily staffed distributing packages for Amazon at the Facility. *Id.* ¶¶ 17-18, 30-31. On or about December 4, 2013, Decedent Smith was fatally injured while attempting to clear a jam in the A-CSP. *Id.* ¶¶ 32-33, 37. As Decedent Smith attempted to clear the jam, his arm became caught in the machine, and he was pulled through a gap less than six inches wide before falling approximately fifteen to eighteen feet onto the concrete ground below. *Id.* ¶ 34. As a result of the accident, Smith sustained injuries, including injuries to his head and hip. *Id.* ¶ 35. He was taken to Robert Wood Johnson Hospital in Rahway, New Jersey, where he was pronounced dead. *Id.* ¶ 37. The autopsy report performed on Decedent Smith listed his official cause of death as multiple blunt force impact injuries. *Id.* ¶ 38.

On or about September 4, 2014, at the order of the Superior Court of New Jersey for the County of Essex, Chancery Division Probate Part, the Essex County Surrogate issued letters of General Administration appointing Plaintiff Hunter as the general administrator *ad prosequendum* of the estate of Decedent Smith. *Id.* ¶ 40.

On November 19, 2015, Plaintiffs filed a complaint in the Superior Court of New Jersey for the County of Essex, Law Division, Notice of Removal, ECF No. 1 Ex. A, bringing wrongful

death, survivorship, negligence, punitive damages, and strict product liability claims against Defendants.

With the consent of Defendants Amazon and Genco, Defendant Dematic removed the action to this Court on February 17, 2016. Notice of Removal, ECF No. 1. Plaintiffs moved to remand the case to state court for lack of subject matter jurisdiction, ECF No. 11, and Defendants Amazon and Genco moved to dismiss. ECF Nos. 3 (Amazon), 9 (Genco). On March 21, 2016, Plaintiffs filed an amended complaint in this Court, asserting that subject matter jurisdiction is proper. ECF No. 19. The Court granted Plaintiffs leave to file the amended complaint, granted Amazon permission to withdraw its motion to dismiss, and denied Plaintiff's motion to remand and Genco's motion to dismiss as moot on May 18, 2016. ECF No. 35.

The amended complaint again brings five causes of action against the Defendants. In Count One, Plaintiffs claim again that all Defendants owed and negligently breached duties to Decedent Smith, causing his wrongful death. ECF No. 19 ¶¶ 42-45. These duties included:

    a. Designing the A-CSP in a manner that would enable its safe operation and use by persons working on, with, or near it, including when jammed and to clear james, including with as many kill switches as necessary to ensure safe operation and use;

    b. Manufacturing the A-CSP in the same manner;

    c. Installing the A-CSP in the same manner;

    d. Servicing the A-CSP in the same manner;

    e. Modifying the A-CSP in the same manner;

    f. Upgrading the A-CSP in the same manner;

    g. Training workers tasked to work on, with, or near the A-CSP in the same manner;

    h. Training workers to confront A-CSP jams in the same manner;

    i. Training workers to clear A-CSP jams in the same manner;

    j. Training workers to work on or with the A-CSP in teams; [and]

    k. Forbearing from demanding such production from those who worked on, with, or near the A-CSP that would enable its safe operation and use.

*Id.* ¶ 43.

    In Count Two, Plaintiffs bring a survival action against all Defendants, claiming that, as the result of Defendants' negligence, Decedent Smith suffered pain and suffering and loss of enjoyment of life from the time of the accident to his death. *Id.* ¶¶ 46-47. In Count Three, Plaintiffs bring a claim for strict product liability against Dematic only. *Id.* ¶¶ 48-55. Plaintiffs claim that Dematic "designed, developed, manufactured, assembled, marketed, supplied, distributed, sold, serviced, redesigned and/or placed into the stream of commerce" the A-CSP at the Facility and owed the operators, users, and bystanders of the equipment a duty of reasonable care. *Id.* ¶ 49. Plaintiffs claim that the conveyor belt system was "defective and negligently designed," in violation of that duty, because it did not include "safe and appropriate guards and other safeguards" to protect users from injury, *id.* ¶¶ 50-51, that it was defective because it did not include "adequate warnings and instructions" and the design had not been adequately tested for safety, *id.* ¶ 52, and that it had been manufactured defectively. *Id.* ¶ 53. In Count Four, Plaintiffs bring a claim for post-sale negligence against Dematic only, alleging that Dematic "negligently performed post-sale service of the A-CSP, including its repair, service, maintenance, modification, and alteration," and failed to "recall, repair, modify and warn" the operators of the A-CSP, leading to Decedent Smith's death. *Id.* ¶¶ 56-59. In Count Five, Plaintiffs allege that Defendants Amazon and Genco owed and negligently breached duties to Decedent Smith, causing his death. *Id.* ¶¶ 60-65. These duties included:

    a. Training Smith to operate and otherwise work on, with, or near the A-CSP in a manner ensuring his safety from foreseeable harm;

    b. Training Smith to confront A-CSP jams in the same manner;

    c. Training Smith to clear A-CSP jams in the same manner;

    d. Training Smith to work on or with the A-CSP with at least one teammate;

    e. Forbearing from demanding such production from Smith that reasonably foreseeably would expose him to harm by operating or working on, with, or near the A-CSP; [and]

    f. Restricting the operation or use of the A-CSP in such a manner that would keep Smith safe, including, by example, clearing jams while the A-CSP was in operation or was capable of operating.

*Id.* ¶ 61.

Plaintiffs seek compensatory damages exceeding $150,000, punitive damages, interest, and costs of suit. *Id.*

Defendant Dematic now moves to dismiss several claims in the amended complaint. ECF No. 25. Dematic argues that (1) the individual Plaintiffs lack standing to bring the survival claim in Count Two, (2) the individual Plaintiffs cannot bring the product liability claim in Count Three and the post-sale negligence claim in Count Four because they did not suffer direct harm, and (3) Counts Three and Four must be dismissed in their entirety because Plaintiffs fail to plead the statutory claim required by the New Jersey Products Liability Act ("NJPLA"), N.J.S.A. 2A:58C-1, 2. Plaintiffs submitted a brief in opposition on May 2, 2016, ECF No. 32, and Defendant Dematic filed a reply brief on May 9, 2016. ECF No. 33.

## STANDARD OF REVIEW

### I. Motion to dismiss for lack of standing

A motion to dismiss for lack of standing is reviewed under the "lack of subject matter jurisdiction" provision of Fed. R. Civ. P. 12(b)(1) because "standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Standing is a "threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution." *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997).

"When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). To establish standing, a plaintiff must demonstrate (1) that she "suffered an injury in fact, an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) that there is a "causal connection between the injury and the conduct complained of;" and (3) "that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). On a motion to dismiss challenging a plaintiff's facial allegation of subject matter jurisdiction, "the court must consider the allegations of the complaint as true." *Mortenstern v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### II. Motion to dismiss for failure to state a claim

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* at 679.

In considering the plaintiff's claims, the Court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint. *See Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1357 at 299 (3d ed. 2014). "A 'document integral to or explicitly relied on in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).[1]

If a complaint fails to state a claim upon which relief can be granted, a plaintiff should ordinarily be granted the right to amend its complaint. The Supreme Court has instructed that

---

[1] "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 255 n.5 (3d Cir. 2004).

8

"[t]he grant or denial of an opportunity to amend is within the discretion of the District court, but outright refusal to grant the leave without any justifying reason . . . is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In the Third Circuit, plaintiffs whose complaints fail to state a cause of action are entitled to amend their complaint unless doing so would be inequitable or futile. *Fletcher-Harlee Corp. v. Pote Concrete Contrs., Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).[2] In *Shane v. Fauver*, 213 F.3d 113 (3d Cir. 2000), the Third Circuit stated:

> [W]e suggest that district judges expressly state, where appropriate, that the plaintiff has leave to amend within a specified period of time, and that application for dismissal of the action may be made if a timely amendment is not forthcoming within that time. If the plaintiff does not desire to amend, he may file an appropriate notice with the district court asserting his intent to stand on the complaint, at which time an order to dismiss the action would be appropriate.

*Shane*, 213 F. 3d at 116 (citing *Borelli v. City of Reading*, 532 F.2d 950, 951 n.1 (3d Cir. 1976)).

## DISCUSSION

### I. Count Two: individual standing to bring a survivorship action

Defendant Dematic argues that the Individual Plaintiffs do not have standing to bring the second cause of action because the New Jersey Survival Act authorizes only the "executor or administrator" of a decedent's estate to bring an action for survivorship. ECF No. 25 at 5-6. The Court agrees.

---

2 The *Fletcher-Harlee* court stated that "to request leave to amend a complaint, the plaintiff must submit a draft amended complaint to the court so that it can determine whether amendment would be futile." The court in *Fletcher-Harlee* also noted that the longstanding rule that leave to amend a complaint must be granted *sua sponte* stands in tension with the longer-standing rule that a plaintiff must submit a draft amended complaint to the court to allow the court to determine whether amendment would be futile. *Fletcher-Harlee*, 482 F.3d at 252-53.

9

New Jersey's Survival Act allows "[e]xecutors and administrators" of a decedent's estate to bring actions for damages for "any trespass done to the person or property" of the decedent – before his death – that the decedent could have brought if he were still living. N.J.S.A. 2A:15-3. *See Aronberg v. Tolbert*, 207 N.J. 587, 593 (N.J. 2011) (Survival claim "belongs to the estate" of decedent and may be brought only by estate's "appointed representative"); *Alforne v. Sarno*, 87 N.J. 99, 108 (N.J. 1981) (A survival action "inheres in the estate" and "merely perpetuat(es) the right of action which the deceased himself would have had, to redress his own injuries, but for his death"), *overruled on other grounds by LaFage v. Jani*, 166 N.J. 412 (N.J. 2001).

Reshonda Hunter is the administrator *ad prosequendum* of the estate of Decedent Smith. ECF No. 19 ¶ 1. As such, she is the only Plaintiff authorized by the Survival Act to bring an action asserting the claims for "pain and suffering" and "loss of life's enjoyment," *id.* ¶ 47, that Decedent Smith "would have had if he was living;" i.e., that he would have been able to bring if he had survived the accident. N.J.S.A. 2A:15-3. The remaining Plaintiffs, including Reshonda Hunter in her personal capacity, do not have standing to bring survival actions.

This does not mean that the individual Plaintiffs may not benefit from any eventual recovery from Count Two. Actions brought under the Survival Act "belong[ ] to the estate." *Aronberg*, 207 N.J. at 593. Accepting, for purposes of this motion, that the Individual Plaintiffs are Decedent Smith's heirs, ECF No. 19 ¶¶ 3-5, 16, Plaintiffs are correct that they may eventually be "collectively entitled to the damages that accrue as the result of the survival action[ ]" brought by Reshonda Hunter as administrator *ad prosequendum* of the estate of Ronald Smith. ECF No. 32 at 7.[3] But though they may share in the recovery, they do not have standing to bring

---

[3] Plaintiffs cite to N.J.S.A. 2A:31-4. This is a provision of the Wrongful Death Act, under which Plaintiffs bring Count One of the amended complaint, not the Survival Act, under which Plaintiffs bring Count Two. As discussed, however, Plaintiffs' general assertion that they may

Survival Act claims themselves. Count Two is dismissed with prejudice as to the claims of Rashaan Smith, Dorian Smith, Leia Smith, and Reshonda Hunter and survives with respect to the claim of Reshonda Hunter in her capacity as administrator *ad prosequendum* of the estate of Ronald Smith only.

## II. Counts Three and Four: product liability and post-sale negligence claims

Dematic claims that the strict product liability and post-sale negligence claims must be dismissed because they are subsumed by the NJPLA and that, in any event, the Individual Plaintiffs lack standing to bring either claim. Counts Three and Four assert a single claim properly brought under the NJPLA, but the Individual Plaintiffs lack standing to bring such a claim on behalf of themselves.

### A. Counts Three and Four are a single action brought properly under the NJPLA.

Counts Three and Four allege that harm was caused by the improperly "designed, developed, manufactured, assembled, marketed, sold, supplied, distributed, installed, serviced, maintained, modified, [and] upgraded," A-CSP, which Defendant Dematic failed to timely "recall, repair, modify and warn its operators, users, bystanders, and others who foreseeably might be harmed by it" after learning of the product's defects. ECF No. 19 ¶¶ 49, 57. The NJPLA provides a single statutory basis for "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by a breach of an express warranty." N.J.S.A. 2A:58C-1(a)(3). The NJPLA "established the sole method to prosecute a product liability action" under New Jersey law, and after its

---

share in damages awarded under the Survival Act claim is correct. *See Aronberg*, 207 N.J. at 593.

enactment in 1987, "only a single product liability action remains." *Tirrell v. Navistar Int'l, Inc.*, 248 N.J. Super. 390, 398-99 (N.J. App. Div.), *certif. denied*, 126 N.J. 390 (N.J. 1991). The Third Circuit, the U.S. District Court for the District of New Jersey, and New Jersey state courts have all consistently dismissed New Jersey common law product liability claims as subsumed by the NJPLA's single cause of action for product liability-related claims. *See, e.g., Port Authority of New York and New Jersey v. Arcardian Corp.*, 189 F.3d 305, 313 (3d Cir. 1999) (affirming dismissal of common law negligence claim based on allegedly defective product because the NJPLA is the "sole basis of relief under New Jersey law available to consumers injured by a defective product") (quoting *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991)); *Brown ex rel. Estate of Brown v. Philip Morris Inc.*, 228 F. Supp. 2d 506, 516 (D.N.J. 2002) ("[T]he PLA clearly subsumes plaintiff's common-law claims for strict liability and negligence" in action brought against tobacco manufacturers for the smoking-related death of plaintiff's husband); *Green v. Gen. Motors Corp.*, 310 N.J. Super. 507, 517 (N.J. App. Div. 1998) ("[C]auses of action for negligence, strict liability and implied warranty have been consolidated into a single product liability cause of action" under the NJPLA).

Plaintiffs and Defendant agree that, because Plaintiffs' strict product liability and post-sale negligence claims are both based on alleged defects in the design, manufacturing, and maintenance of a product, Dematic's A-CSP, the claims are subsumed by the NJPLA. *See* ECF No. 25 at 8-10; ECF No. 32 at 9; ECF No. 19 ¶¶ 49-55, 57-59. Defendant is incorrect, however, that Plaintiffs "improperly pled common law claims . . . rather than bringing a statutory claim" under the NJPLA. ECF No. 25 at 10. Plaintiffs explicitly bring both claims under the NJPLA. *See* ECF No. 19 ¶¶ 55, 59 (seeking damages "pursuant to N.J.S.A. 2A:58C-1 through -11"); ECF No. 32 at 9 (explaining that Plaintiffs "divided the claim into multiple counts to plead with

specificity the failings of the defendant with regard to its development, manufacturing, maintenance of the conveyor system, in addition to its failure to warn, repair, or recall once defects had been discovered," but that both are NJPLA claims).

Defendant argues that, even if pled properly, the negligence-based claim in Count Four must be dismissed because the NJPLA "subsumes claims of defect sounding in negligence," leaving only claims sounding in strict liability available. ECF No. 33 at 7 (citing *Gupta v. Asha Enterprises, LLC*, 27 A.3d 953, 958 (N.J. Super. Ct. 2011)). Although the NJPLA's theory of recovery is, "for the most part, identical to strict liability," the language of the NJPLA "is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products." *In re Lead Paint Litigation*, 191 N.J. 405, 436 (N.J. 2007) (quoting William A. Dreier et al., New Jersey Products Liability & Toxic Torts Law § 1:2-1 (2007)). Because "causes of action for negligence [and] strict liability . . . have been consolidated into a single product liability cause of action" under the NJPLA, *Green*, 310 N.J. Super. at 517, the Court recognizes Counts Three and Four as separate factual allegations supporting a single cause of action. The Court will consolidate Counts Three and Four into a single claim under the NJPLA.

### B. The Individual Plaintiffs lack standing to bring an NJPLA claim and fail to state a claim.

Defendant Dematic argues that the Individual Plaintiffs do not have standing to bring claims under the NJPLA. The Court agrees.

The NJPLA allows plaintiffs to bring an action for "harm" caused by a defective product and defines "harm" as "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional

13

harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph." 2A:58C-1(b)(2). The New Jersey Supreme Court has held that the NJPLA requires proof of a "personal physical injury." *Sinclair v. Merck & Co., Inc.*, 195 N.J. 587, 595 (N.J. 2008). Dematic argues that, because the Individual Plaintiffs do not allege that they personally suffered either (a) loss of consortium or services or (b) physical injury caused by Dematic's defective A-CSP, their claims must be dismissed. ECF No. 25 at 6-8.

It is not clear whether *Sinclair* requires plaintiffs to have suffered a physical injury themselves, or whether they can bring claims for emotional harm arising out of someone else's physical injury. As Plaintiffs point out, the plaintiffs in *Sinclair* did not allege that *anyone* had suffered personal physical injury at all, and the court did not address NJPLA's provision defining "harm" to include "pain and suffering, mental anguish, or emotional harm." ECF No. 32 at 7. *See also Kury v. Abbott Laboratories, Inc.*, 2012 WL 124026, at *6 (D.N.J. Jan. 17, 2012) (dismissing NJPLA claim brought against manufacturer of defective baby formula for failure to allege physical injury where "nothing in the allegations contained in the Complaint sets forth any physical injuries to Plaintiff or Plaintiff's infant child, who is not a party in this case," suggesting that harm to plaintiff's child might be sufficient to support plaintiff's cause of action). In contrast, Plaintiffs here clearly allege that *Decedent Smith* suffered physical injury, *see* ECF No. 19 ¶¶ 54, 59, and they now claim that they all suffered "extreme mental anguish, emotional harm, and loss of consortium derived from the physical injury and death" of Decedent Smith. ECF No. 32 at 7.

In any event, however, Plaintiffs do not allege any personal harm in the amended

complaint.[4] Because the Individual Plaintiffs do not allege, in the complaint, that they suffered personal "injury in fact," they fail to meet the first prong of *Lujan*'s standing requirement. 504 U.S. at 560-61. They also fail to state a plausible claim for relief under the NJPLA. *Iqbal*, 556 U.S. at 678.

Again, this does not mean that the Individual Plaintiffs may not benefit from any eventual recovery. Defendant Dematic concedes that "[t]he Administratrix [of Decedent Smith's estate] . . . is the proper party to seek recovery for strict products liability and post-sale negligence on behalf of the Decedent." ECF No. 25 at 8. The NJPLA's definition of "claimant" specifically allows for "an action brought through or on behalf of an estate." N.J.S.A. 2A:58C-1(b)(1). In this case, Reshonda Hunter, in her capacity as administrator *ad prosequendum* of the estate of Ronald Smith, has standing to bring NJPLA claims on behalf of Decedent Smith's estate for the personal physical injury caused to Decedent Smith. As Decedent Smith's heirs, the remaining Plaintiffs, including Reshonda Hunter in her personal capacity, may share in any eventual recovery from the claim brought by Reshonda Hunter in her capacity as administrator *ad prosequendum* of the estate of Ronald Smith. Individually, however, they do not have standing to bring the NJPLA claims in Counts Three and Four and fail to state a valid claim under the statute, so such claims must be dismissed.

---

[4] Nor could Plaintiffs, based on the facts alleged in the amended complaint. Loss of consortium is a cause of action "founded upon the marriage relation. Absent such relationship, the right does not exist, and thus no recovery may be had for loss thereof." *Leonardis v. Morton Chemical Co., Division of Morton Norwich Products*, 184 N.J. Super. 10, 10 (N.J. App. Div. 1982) (citing *Ekalo v. Construction Service Corp.*, 46 N.J. 82 (N.J. 1965)). None of the Individual Plaintiffs claim that they were married to Decedent Smith. Additionally, a common law action for negligent infliction of emotional distress requires proof of "observation of the death or injury at the scene of the accident." *Portee v. Jaffee*, 84 N.J. 88, 101 (N.J. 1980). None of the Individual Plaintiffs claim that they were present at the scene of Decedent Smith's accident.

## CONCLUSION

Defendant Dematic's motion to dismiss is granted in part and denied in part. Count Two is dismissed with respect to the claims of the Individual Defendants and survives with respect to the claim of Reshonda Hunter in her capacity as administrator *ad prosequendum* of the estate of Ronald Smith only. Counts Three and Four are consolidated into a single cause of action brought under the NJPLA, are dismissed without prejudice respect to the claims of the Individual Defendants, and survive with respect to the claims of Reshonda Hunter in her capacity as administrator *ad prosequendum* of the estate of Ronald Smith only. An appropriate order follows.

DATE: 15 June 2016

William H. Walls
Senior United States District Court Judge